ESTHER YORN, respondent,

*v.*

ARTHUR YORN, appellant.

[Argued October 23d, 1946. Decided January 17th, 1947.]

On appeal from a decree of the Court of Chancery, in which court the following opinion was filed.

"The petition by the wife for divorce on the ground of extreme cruelty, contains a separate cause of action for the recovery of moneys. The divorce action was tried first and resulted in a decree *nisi*. The controversy over the money has now been heard.

"The parties became seriously interested in each other in the spring of 1942. Defendant, a dentist, who had been practicing in Pennsylvania, had moved to East Orange a year or so earlier, and felt that it might be unwise to assume the responsibility of caring for a wife until he were better established in his new location. The petitioner told him that she had $10,000 which she had inherited from her father, and that this would take care of money matters until his practice was established. According to Dr. Yorn, she said she would give it to him as a dowry. Petitioner says that she merely promised to help if he needed help.

"On December 4th, the parties went to a bank in Newark to deposit $5,000 of petitioner's money. Defendant proposed that it be deposited in his name. She insisted that it be so deposited that both must sign in order to withdraw any of the money. It was so arranged. Defendant testifies that petitioner gave as her reason for wanting the account in both names that they were not yet married. On December 18th, the rest of petitioner's money, $4,672, was deposited in another bank in Newark in an account of the same character. The wedding took place December 27th. Shortly thereafter defendant asked that the money be transferred to his sole name and his wife replied it was not necessary, and that any time the money was required, she would be glad to sign over. The following March, $4,600 was withdrawn from the account and loaned to Mrs. Yorn's brother for a few days and then redeposited. In May, $100 was used to buy a present for her mother. The next month occurred the ring episode discussed below, and in July, Mrs. Yorn left her husband and returned to her mother's home.

"It is entirely clear at this stage that there had been no gift of the fund. Mrs. Yorn had not stripped herself of all control over the money. If, before marriage, she meant to make a gift, the intent had disappeared. She expected the money to be used only in case of need. The only withdrawals that had been made were the two mentioned, for the benefit of members of her family.

"On February 15th, 1944, while the parties were still separated, Dr. Yorn drew $1,000 on a slip which was signed by

both parties. Mrs. Yorn, at the time, was expecting the birth of a child. She says that she intended, when the child was born, to return to her husband and that the money was drawn to buy furniture for the home which they expected to establish. The baby was stillborn and the money was not used for the purpose stated, but was retained or spent by Dr. Yorn. He denies that he was to use the money for furniture; but he tells nothing of the circumstances of the withdrawal.

"In October, 1944, Mrs. Yorn returned to her husband. On October 27th, the money in one of the accounts, $4,645, was transferred to his sole name, and on November 10th, a like transfer was made of the other account $4,041. Petitioner testifies that her husband said that they could live happily together if only she trusted him and that she ought to put the money in his name to show her trust and that he would not use the money however. So she complied with his request. Dr. Yorn's version is that about the time his wife returned to his home, she reminded him that she had promised long ago to give him the money and said that she was now willing to turn it over to him, and without any prompting on his part, she did so. Four months later, in March, 1945, petitioner left her husband and never returned. Before she did so, she asked for the money and Dr. Yorn refused.

"The payment of money, part of the principal of a married woman's separate estate, to her husband, raises no presumption that she intends to give him the money. The inference is a loan or a deposit for safekeeping. *Pierotti* v. *Seigling, 134 N. J. Eq. 105.* Dr. Yorn has the burden of proving donative intent. Accepting his story with regard to the sum of $1,000 which was drawn from the bank while the parties were living apart, we may infer that he told his wife he wanted that sum and asked her to sign the withdrawal slip and she she did so. Thereby he became her debtor. No gift is indicated.

"Mrs. Yorn must have realized when she returned to her husband in October, 1944, that his cruelty might again compel her to leave. I can understand that she would be anxious that their marriage should last and that she might even transfer her separate estate to him as a token of confidence,

in the vague hope of cementing his affection. But I do not think she would have been willing to give him the money absolutely. The defendant has not sustained the burden of proof of donative intent.

"When the parties became engaged, defendant gave petitioner an engagement ring and, when they were married a wedding ring. In June, 1944, the month before the first separation, Mrs. Yorn, with defendant's approval, sold the rings for $550 and endorsed the check over to him. She says she did so because he demanded the check, became infuriated when she hesitated, and frightened her into compliance. Dr. Yorn denies this. He testifies that she refused in the first place to accept his gift of the rings, because they had been used before with the same significance and the wedding ring was too large; that petitioner never wore the rings; that he continually had them in his own possession; that he made the decision to sell, and entrusted her with the rings for that purpose; that she naturally turned over the check to him. The proofs, however, abundantly show that Mrs. Yorn habitually wore the rings until about the time of the sale. They were hers and the proceeds thereof.

"There will be a decree for petitioner for both the proceeds of the rings and the other moneys."

*Messrs. Kristeller & Zucker (Mr. Saul J. Zucker, of counsel), for the appellant.*

*Mr. Milton M. Unger (Mr. Sidney S. Jaffe, of counsel), for the respondent.*

PER CURIAM.

The decree under review will be affirmed, for the reasons stated in the opinion filed in the Court of Chancery.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, WACHENFELD, EASTWOOD, WELLS, RAFFERTY, DILL, FREUND, McLEAN, JJ. 13.

*For modification*—COLIE, McGEEHAN, JJ. 2.